An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-885

Filed 17 June 2026

New Hanover County, Nos. 23JA000172-640, 23JA000173-640, 23JA000174-640

IN THE MATTERS OF: M.L.W., B.W., K.R.

Appeal by respondent-father from order entered 1 May 2025 by Judge J.H. Corpening, II in District Court, New Hanover County. Heard in the Court of Appeals 3 June 2026.

> *Jane R. Thompson for petitioner-appellee New Hanover County Department of Social Services.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Robert B. Josey, for guardian ad litem.*
>
> *Sean P. Vitrano for respondent-appellant-father.*

STROUD, Judge.

Respondent-father appeals from a permanency planning order awarding guardianship of the children to Ms. Smith[1] and allowing Father visitation. Because Father did not sign the notice of appeal, we do not have appellate jurisdiction. We also decline to exercise our discretion *sua sponte* to invoke Rule 2 of the Rules of

---

[1] Stipulated and other pseudonyms are used.

Appellate Procedure to treat Father's appellate brief as a petition for certiorari and to grant certiorari because it is not needed "[t]o prevent manifest injustice[.]" N.C. R. App. P. 2. We therefore dismiss Father's appeal.

## I.    Procedural Background

On 17 October 2023, New Hanover County Health and Human Services, Department of Social Services (DSS) filed a juvenile petition alleging May, Bree, and Kate[2] were neglected and dependent juveniles. The allegations attached to the petition alleged the children's Mother had died in 2021; Father was the father of two of the children and the stepfather of one child. After Mother's death, Father and the children moved from another state to Nevada.[3] In March of 2023, Father left the children in the care of a relative, Ms. Smith in Nevada, and she refused to return them to Father. The affidavits as to status of minor child (AOC-CV-609) attached to the petition alleged the children had resided with Ms. Smith in North Carolina from 9 August 2023 to the date of the filing of the petition; with Ms. Smith in Nevada from 4 March 2023 to 6 August 2023; with Father in Nevada from August 2021 to 4 March 2023; and before August 2021, with both Mother and Father in another state.

While the children were living with Ms. Smith in Nevada, "Clark County Nevada initiated two (2) reports regarding allegations of abuse" of the children by

---

[2] Respondent is not the father of Kate; the father of Kate is unknown.

[3] It is unclear if the children moved from Georgia or California to Nevada, but we need not resolve this factual discrepancy within the record.

Father, but neither report was substantiated. Ms. Smith had left Nevada during the investigations and "[t]he detective assigned to the case also noted that [Ms. Smith] was less than cooperative." According to Ms. Smith, Father had physically abused two of the children and there was "a past allegation of sexual abuse" of a half-sibling of the children which was also unsubstantiated.

In August of 2023, Ms. Smith "relocated to North Carolina without [Father's] knowledge or permission." DSS specifically alleged that Ms. Smith "removed the Juveniles across state lines without any legal authority to do so and without the express permission of the Juveniles' parent." Father reported he had filed kidnapping charges, presumably in Nevada, but had not "follow[ed] through in the state of North Carolina."

On 1 September 2023, Ms. Smith filed "civil actions in New Hanover County for custody of" the three juveniles. DSS also alleged Father had made no arrangements to provide for the children's medical and educational needs. Since Ms. Smith had "no authority to sign for the provision of services" the children would not be able to attend school as of 18 October 2023 without intervention by DSS.

On 17 October 2023, the trial court entered a nonsecure custody order, finding that there was a "reasonable factual basis to believe" the petition's allegations and that the juveniles were "exposed to a substantial risk of physical injury or sexual abuse because the parent, guardian, custodian, or caretaker has created conditions likely to cause injury or abuse or has failed to provide, or is unable to provide,

adequate supervision or protection."  A "hearing to determine the need for continued nonsecure custody" was scheduled for 23 October 2023.

On 23 October 2023, the trial court held a hearing on the need for continued nonsecure custody.[4]  The trial court found that DSS was "trying to ascertain a physical address for [Father] by communicating with him and requesting an address." The children were placed with Ms. Smith and she was willing and able to continue to provide care for them.  The trial court also found that DSS had "been in contact with law enforcement and Child and Family Services in Las Vegas, Nevada" and that "[t]here is no civil action pending in Nevada or California" regarding the juveniles. The trial court continued nonsecure custody with DSS.

On 1 November 2023, the trial court held a "second hearing" on the need for continued nonsecure custody.  The trial court found, in its order entered on 14 December 2023, that the juveniles had previously lived in Nevada but there was no civil action in another state regarding the juveniles.  Father appeared through counsel, and he was "not in agreement with the current placement of his children" with Ms. Smith.  The trial court continued nonsecure custody with DSS and set the next nonsecure custody hearing for 8 November 2023 as to Father only, as Ms. Smith had waived "further hearings on the need for continued nonsecure custody."

---

[4] This order was signed and filed on 12 March 2024.

After the next hearing, on 8 November 2023, the trial court entered another order on the need for nonsecure custody, also filed on 14 December 2023. Father continued to object to placement of the children with Ms. Smith. An adjudication and disposition hearing was set for 30 November 2023, and the trial court continued nonsecure custody with DSS.

On 29 November 2023, the trial court held the adjudication and disposition hearing, and on 19 February 2024, the trial court entered an order adjudicating the children as neglected and dependent juveniles. Father was granted supervised telephone or video visitation. A permanency planning hearing was set.

On 28 February 2024, the trial court held an initial permanency planning hearing; the order was entered on 2 April 2024. In this order, the trial court found that Father had not yet "scheduled the recommended comprehensive clinical assessment" and was "living with his girlfriend's mother" but reported seeking independent housing. Father was still "not in a position to provide appropriate care for his children at this time[,]" and it would be contrary to the children's best interests to return to Father. Father still needed to "engage in his Family Services Agreement" and secure his own housing so an Interstate Compact on the Placement of Children (ICPC) home study could be done on his residence. The trial court found Father was "not making adequate progress within a reasonable period of time under the plan." The trial court established a primary plan of reunification and a secondary plan of

guardianship with a relative. The next permanency planning hearing was set for 13 June 2024.

A hearing was held on 13 June 2024 and on 20 November 2024, a permanency planning order was entered. The trial court found Father was still not in a position to provide appropriate care for the children because he was not fully engaged in services to alleviate the causes that led to their removal, was not engaged in his Family Services Agreement, and had not secured independent housing appropriate for the children. The primary plan remained as reunification, concurrent with a secondary plan of guardianship with a relative. The next permanency planning hearing set for 24 October 2024.

On 24 October 2024, the trial court allowed Father's motion to continue because it had not yet entered a written order from the 13 June 2024 hearing. The case was continued to 7 November 2024. Thereafter, the trial court held a hearing on 7 November 2024 and entered an order on 25 November 2024, continuing the next permanency planning hearing until 16 December 2024.

After the 16 December 2024 permanency planning hearing, by order entered 10 April 2025, the trial found that Nevada denied the ICPC request for Father's home "due to lack of case plan compliance[.]" Father still did not have adequate housing or documentation of employment nor did he complete a comprehensive clinical assessment. Father had Facetime calls with the children but missed some calls. Father had not visited the children in North Carolina or in person. The primary plan

was changed to guardianship with a relative. The next permanency planning hearing was set for 12 March 2025.

On 14 March 2024, Father's motion for continuance was allowed, continuing the case until 3 April 2025. On 3 April 2025, the trial court held a hearing, and entered its permanency planning order on 1 May 2025, awarding guardianship of the children to Ms. Smith and allowing Father visitation. Father's counsel filed a Notice of Appeal from this Order, but Father did not sign the Notice of Appeal.

## II.  Appellate Jurisdiction

North Carolina General Statute Section 7B-1001(c) requires the appealing parent to sign the notice of appeal:  "Notice of appeal shall be signed by both the appealing party and counsel for the appealing party, if any." N.C. Gen. Stat. § 7B-1001(c) (2025). In *In re Q.M.*, the respondent-mother did not sign the Notice of Appeal. 275 N.C. App. 34, 37, 852 S.E.2d 687, 690 (2020). The respondent-mother filed an Amended Notice of Appeal which she had signed, but this Court considered it untimely. *See id.* Thus, the Court allowed DSS's motion to dismiss. *See id.* at 37-38, 852 S.E.2d at 690-91. Ultimately, the respondent-mother's appeal was heard through her petition for certiorari, *see id.* at 38, 852 S.E.2d at 691, but here, no such petition has been filed.

We have also considered whether we should exercise our discretion *sua sponte* to invoke Rule 2 of the Rules of Appellate Procedure to treat Father's appellate brief as a petition for certiorari and to grant certiorari. Under Rule 2 of our Rules of

Appellate Procedure, the Court may grant review by certiorari in order "[t]o prevent manifest injustice[.]" *See* N.C. R. App. P. 2 ("To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.").

Father argues on appeal that "[t]he trial court lacked jurisdiction under the [Uniform Child Custody Jurisdiction and Enforcement Act] UCCJEA to enter the permanency planning order awarding guardianship," so the Order "must be vacated and the children returned to Father." DSS and the guardian *ad litem* argue the trial court properly exercised temporary emergency jurisdiction under North Carolina General Statute Section 50A-204. *See* N.C. Gen. Stat. 50A-204 (2025). We have carefully reviewed the arguments and record; Father has not demonstrated "manifest injustice" as the trial court properly exercised temporary emergency jurisdiction under North Carolina General Statute Section 50A-204.

Father also raises an argument regarding the specifics of his visitation with the children. However, again Father has not demonstrated "manifest injustice" such that we need suspend our rules and treat Father's appeal as a petition for certiorari. We therefore decline to exercise our discretion to *sua sponte* grant certiorari, and Father's appeal is dismissed.

DISMISSED.

Judges ARROWOOD and COLLINS concur.

Report per Rule 30(e).